Chacoa v. Abraham Good morning, may it please the court. Steven Bergstein for the plaintiff appellant Chauca. The district court was required to charge the jury on punitive damages under the New York City Human Rights Law in this pregnancy discrimination case. With respect to the city, how on earth do we figure out what the Human Rights Law, what does the Restoration Act mean? It seems to be general beyond the ordinary. It just says what? It's to be liberal and it's not to be looked at in parallel with the federal law. And then are we left on our own at that point? Well, then we look at the terms of the statute. And let me focus on the terms. The Restoration Act? The city law. The city law, bearing in mind what the city council said when it passed the Restoration Act. And so let me talk about the way the city law is structured because it's different from Title VII. It's a self-contained set of rules and it's not coterminous with Title VII. Section 802A says you have a cause of action for damages including punitive damages. Then under 10713, they have this series of provisions that discuss punitive damages in detail. And the only state of mind requirements under 10713B is that management is responsible for punitive damages, even if an employee commits the discriminatory act. The only way an employer can avoid punitive damages completely as a safe harbor is under Section E, if the employer satisfies or complies with Commission of Human Rights programs, which don't exist, by the way. They haven't gotten around to do it. So other than that, the best the employer can do is mitigate the amount of punitive damages under Section E, if they comply with those four factors. But that's not a safe harbor. That just allows them to tell the jury, you know, we acted in good faith and we did what we could. Don't hit us with too large of a punitive damages award. But the jury, as a result of all of that, could go through those factors and if it found, oh, they've done all of these things, it could award zero in punitive damages. Punitive damages aren't mandated. Correct. The only mandated act we're advocating here is that the jury should be charged with punitive. They don't have to find punitive. And told how to figure it out. Correct. Under Title VII, good faith compliance, those provisions under the city law, those four provisions, under Title VII, that's a safe harbor and the jury doesn't have the option to award punitives. And good faith compliance, as a matter of law, disentitles the plaintiff to any punitive damages. But that's not the way the city law works. The city law is more harsh. Stop. I need to have one thing clarified for me and maybe I just ferreted it out well enough from the arguments made to us. What do you want us, assuming we agree with you, what are you asking us to tell the district court? Take it back and retry punitive damages under both Title VII and city or just under the city? Title VII and city. Okay. At a minimum. Because the way you've identified the issue in one place in the brief, you've talked about the error in not charging under city administrative law, right? At a minimum, a retrial on punitive damages under city law. Well, what is, I'm still not clear, what is the source of law that establishes the specific standard that must be met to show that plaintiffs are entitled to punitive damages? Under the city law? Yeah. Several. First, 502A, discrimination victims have a cause of action for damages, including punitive damages. Then under 13B, it tells you that even acts by an employee can result in punitive damages. And then we have E through F that talk about ways that the employer can get out of paying punitives or how they can minimize punitives. But unlike Title VII, there's no built-in safe harbor that says if you acted in good faith as a matter of law, there can be no punitives. The city law presumes that there's going to be punitive damages. And there are a couple of district court cases we cited in our brief which reflect that. Federal district court. Correct. I mean, you say that, as I understand it, that the city council overruled Farias with the Restoration Act. Correct. But when you read the committee report itself accompanying the act, that committee report cites a number of court cases that the act was intended to overrule. And Farias is not one of them. Correct. But if you think about what the city council was saying in 2005, that federal courts are mistakenly applying the same standards, federal standards, to city law claims, it seems clear that they're including a case like Farias because. . . Why didn't they mention it? Well, they didn't mention it. But if you look at the way Title VII. . . I mean, that's my question. Why didn't they mention it? If they're mentioning other cases. . . I know. Wouldn't this be a pretty significant case that you would want to mention? It wasn't mentioned. All I can say is that the analysis in Farias is entirely consistent with the analysis that the city council rejects in terms of how to interpret the city law, that you can't simply assume federal standards apply, which is what this court did in Farias. And if you look at the way the statutes are structured, they're very different statutes. That was the whole point of the Restoration Act. These are entirely separate entities. Again, willfulness results in different consequences depending on what act we're talking about. And the city council said in 2005 traditional methods of law enforcement ought to be applied in the civil rights context. And that's a no-tolerance vantage point in terms of discrimination, where if you engage in discrimination, not only are you going to pay damages, but you're looking at the very reality of punitive damages. So I recognize this court generally cannot overturn one of its precedents, but the city council made it clear that certain federal cases have been misapplying the city law, and the way Farias analyzed the issue is exactly what the city council said. State appellate decision post-restoration. Tell us and a trial court what the standard is, what you should charge the jury under the Restoration Act and more generally the city law. What's the standard? What am I told as a juror that I've got to find out? I don't mean what you think. I mean has any state appellate court told me as a trial juror? Not that I'm aware of. Then we would be doing that for the first time, right? Correct. Isn't that something a state court should do, not us? Well, I don't think it's that hard. You can say it was hard. There are a lot of easy things that we're not allowed to do. That's an interesting question, who is responsible for devising the proper punitive damages charge, but you can start with Section E with those factors, 1 and 2, and say these are potential mitigating factors. You can determine based on these and related facts whether the amount of punitive damages should be minimized. You could ask the Court of Appeals in Albany to tell us what this state city statute means. That's a possibility. Wouldn't certification make more sense than us resolving it? Especially given the fact that we have pariahs there, but we may read as something that precludes us from doing something different from pariahs until we hear from. I wouldn't argue against certification, and it's happened before in the sex harassment context in a similar situation where the Court of Appeals says there is no FARAG or L-Earth affirmative defense in sexual harassment cases. Is that Crone? That was Czarkiewski, Czarkiewska. The Court of Appeals said local law can impose a greater penalty than state law, and you can have a different set of laws depending on the jurisdiction and depending on the legislative intent with respect to employment discrimination. Thank you. Thank you. Good morning. May it please the Court, I'm Arthur Foreman for the appellees. And pointing out that the appellees are two individuals, Jamil Abraham and Ann Marie Garrix. They were also found personally liable for the discrimination as well as the Business Park Management Systems, LLC. I point that out because the Appellate's Council is relying strongly on the New York City local law paragraph 13, and I would point out that he goes to paragraph E of 13, but if we go to the top of paragraph 13, what that paragraph is called, it says that it's dealing with employer liability for discriminating conduct by employee. Don't you have, though, you've got language of the city councils requiring that the New York City human rights law have an independent and liberal construction. It's not clear what it is the city council was exactly trying to do. Doesn't it make sense, rather than have a federal court further way into this, you know, we've got Farias. It's not clear what the status of Farias is in light of the subsequent legislation. Doesn't it just make more sense to certify to the New York Court of Appeals? Reluctantly, I cannot argue against that approach. I just would point out that I did cite to a First Department case, a 2014 case, Salemi v. Gloria's Tribeca, Inc., and in that case, they seemed to use, they definitely did use a different standard for punitive damages, more like the federal standard of malice or reckless indifference. Also pointing out that conscious knowledge of a violation of law is not required for that standard. As said in Farias, malice or reckless indifference can be inferred from outrageous or egregious conduct. That is what the court did in Salemi. Citing to pre-2005 cases, the Restoration Act, of course, was passed in 2005. Salemi, the First Department, was citing to pre-2005 cases. So, I mean, here, right, you have a human rights law that does not have a two-tiered structure. Well, in Salemi, they seemed to apply a two-tiered structure because to affirm the trial court, it said that there was pretty egregious and outrageous conduct. Well, I mean, you could read it, you could read under CalStat as saying that you don't have a two-tiered structure. The human rights law could be read to say that there's no separate standard for liability for punitive damages. At least, it's a question. And wouldn't that suggest, why wouldn't that suggest that the City Council didn't intend to impose a higher standard for punitive damages than for compensatory damages? Well, the Restoration Act did not make any changes to the statute as far as punitive damages. The Paragraph 13 that's relied on, of course, was passed in 1991, which is shown in… Vakrusky v. New School does say at page 480 that the New York City human rights law, Paragraph 13, was overhauled in 1991, almost more than 10 years before Farias. So, the law has not changed. Well, if the City Council wanted to create a higher standard for punitive damages, couldn't it have just, you know, used language, imported language as that which you find in Section 8126A for willful, wanton, or malicious acts, for example? It could have imported it, and it could have spelled out that punitive damages would, they might be mitigating damages for punitive damages. The only mitigation and the only reference to punitive damages is in relation to the employer, not the two employees. So, the question is, if we're going to rely on that statute, what about, are we going to try punitive damages for the individuals or only for the business? So, all this leads me to think that I agree with your reluctant agreement that certification may be proper. We think, I guess, that maybe the Court of Appeals should make up their minds. Again, I cannot argue with that position. If Appellant's Counsel has not found any cases on point, I have not. I just found cases that seem to have two standards. Thank you. Thank you. I don't have much in rebuttal except to emphasize that although the language that we're talking about was enacted in 1991, the City Council did not have to rewrite the law in 2005 if it's going to say that the courts are getting it wrong and that the entire statutory construction needs to be reconsidered in light of what we're trying to accomplish in enacting this law, which is essentially a no-tolerance statute. And if you read the statute carefully, which I'm sure you have and which we've outlined in our brief, the way it's structured is there's a presumption that the jury has to at least decide whether to award punitives upon a finding of discrimination. Thank you. Thank you very much. Thank you both. The Court will reserve decision.